The last case on calendar is Conocophillips v. Alaska Oil, 23-35512, and each side will have 15 minutes. The last case on calendar is Conocophillips v. Alaska Oil, 23-35512, and each side will have 15 minutes. I'm David Wilkinson representing the Alaska Oil and Gas Conservation Commission, or AOGCC. In this case, Conocophillips drilled in the National Petroleum Reserve in Alaska, or NPRA, under an AOGCC permit. It provided its well data to the agency pursuant to Alaska law, and following that law, the Conoco then sought an extension that's available under that state law for data that relates to the valuation of nearby unleased land. The state found that extension period inapplicable. Conoco then sued in federal court and argued that the state statutes were preempted by federal law. The district court erroneously held that there was implied preemption here, and fundamental to the district court's error was the misunderstanding that Congress had prohibited the federal government from releasing the same data for the lifetime of a lease. But life of lease confidentiality appears nowhere in the applicable statutes. It's not in the Naval Petroleum Reserve's Production Act, the NPRPA. It's not in the Outer Continental Shelf Lands Act, the OCSLA. It appears only in Conoco's lease. But leases don't preempt state law. The district court's ruling was error, and it has real impacts. The AOGCC now can't follow Alaska law within a dual-regulated area, one that includes significant private inholdings where the federal government waives administration of leases. This court should reverse the district court's ruling for two primary reasons. First, there's no support for preemption in the text of the federal laws. The NPRPA is silent on confidentiality. It adopted no preemption clause, and its regulations do nothing more than apply the Federal Freedom of Information Act to information that's held by the Department of Interior. That would be important to know going into this, wouldn't it? Yes, Judge Biden. If you thought that FOIA was applicable and that you could rely on the well exception in 552B, that would be important to know. I mean, there's a pretty good reliance interest if you think that that is the applicable conditions for releasing this information. Well, to the extent that Conoco is aware that the federal government asserts that the Freedom of Information Act applies to its data, that doesn't give it a reliance interest that all that data would be held confidential across the board, particularly with respect to data that's independently collected by state regulators. It's clear that the Federal Freedom of Information Act does not apply to state agencies. By its terms, it applies only to federal agencies. And the applicable regulation, which is at 43 CFR 3152.6, says that the release of data will be subject to the regulations that govern the Department of Interior and implement the Freedom of Information Act there. Those regulations provide no periods of confidentiality. They guarantee no set duration of confidentiality. The commitment that the Freedom of Information Act exceptions, to the extent they're applicable, would apply for the duration of Conoco's lease appears only within the lease terms itself. But if this, I mean, if this information were held by the federal government and somebody were trying to get it under FOIA, it would be covered by Exception 9, wouldn't it? Presumptively, Your Honor. That's correct. The well data, geological data, is exempt from public records requests under the Freedom of Information Act. But that doesn't mean that the federal government can't commit to release that data at earlier times. For example, in the Outer Continental Shelf, the federal government has done that. It has regulations that set specific time periods for the release of data, unlike in the NPRA where it's a regulation that simply says Freedom of Information Act will govern the release. One thing that I think would be helpful, at least to me, if you could explain at some point, is this is a somewhat unusual situation in that we have this sort of dual regulatory authority between the federal government and the states. And in a non-Alaska context, you would not normally expect a state regulator to have much of a role in governing leasing on federal land. So what exactly is your role, you, the state, in regulating the drilling that's taking place within the NPRA? Thank you, Judge Miller. The Alaska Oil and Gas Conservation Commission permits and oversees the drilling of these wells, what goes into wells, what comes out of the wells, and collects the information pertinent to that, with the goal of regulating to protect correlative rights, the rights of others, that might touch on the same pools with respect to protecting the environment for what might be injected into those wells and what might come out of them. So it's part of the state's general oversight of drilling. And Conoco concedes that it couldn't have drilled here without an Alaska Oil and Gas Conservation Commission permit to do so. The AOGCC had been regulating in this area. In fact, the territorial precursor to the AOGCC had collected well data throughout the state since the 1950s. The statute applicable here that the AOGCC follows was in place since 1970. So a decade later, when Congress drafted the NPRPA to open the NPRA to private exploitation in oil and gas development, it would have been aware that the AOGCC had regulatory authority, including within federal areas within the state. And so when they came to you seeking authorization to conduct the drilling for which they gave you the data, you could have said no, and then they would not have been able to drill? Is that right? That's correct. They would not have had a permit. They would not have been able to drill. And this is not true on the outer shelf? On the outer continental shelf, this is not true. The outer continental shelf is exclusively federally regulated. So the AOGCC has no authority within the outer continental shelf. This is a key distinction here, which is one of the reasons that the Outer Continental Shelf Lands Act treats the flow of data between states and federal government differently than the NPRPA and explains why Congress drafted the NPRPA differently. So if we look at the NPRPA itself, that's 42 U.S.C. 6506A, we see that that statute is entirely silent on confidentiality. It opens the reserve for leasing. It recognizes that Alaska provides public services within the reserve, including setting aside half of all receipts for the state. And then it allows for geological and geophysical exploration within the reserve. And that's where ConocoFocus is. That's in that subpart M. And it makes the information that's collected through those exploration activities subject to the conditions of a subparagraph of a section of the Outer Continental Shelf Lands Act. That's 43 U.S.C. 1352A1A. That section, 1352, of the Outer Continental Shelf Lands Act does two things. Information collection and information dissemination. It requires Interior to collect information from explorers and lessees that are operating in the Outer Continental Shelf. And then it requires Interior to disseminate that information to Outer Continental Shelf adjacent states. The NPRPA references only the information collection part of that statute, not the information dissemination. This is important because all of the discussion of confidentiality within the Outer Continental Shelf Lands Act statute arises in the context of those dissemination subparts, where Interior is giving information to states that states otherwise couldn't access themselves in the Outer Continental Shelf. Congress didn't adopt those in the NPRPA. So part M of the NPRPA is a statute of specific reference. It references only A1A. And if Congress had wanted to incorporate more from the Outer Continental Shelf Lands Act, it knows how. It could have done that by expressly identifying those additional statutes. Counsel, has the Department of Interior taken a position on the interpretation of this statute or on the actions in this particular lease? Not to my knowledge, Your Honor, but I haven't spoken directly with them. But they haven't entered an appearance. Nobody's filed an amicus brief. Nobody's issued a letter that said we object or we don't object. No, Your Honor. Do you think it would make sense for us to ask them? To the extent that, Judge Miller, it might be helpful to have their perspective on how they interpret their own regulations, but I do think that their regulations and the statutes do speak for themselves here, that making the federal government's opinion on how to interpret those not necessarily entirely helpful because this is a statutory and regulatory interpretation that the court is well-suited to do. Would we have any obligation to defer to DOI's reading of the statute or the regs here? I don't think the court would need to necessarily defer to DOI's interpretation of the statutes and regs, but we haven't researched that, haven't briefed that, Your Honor, to the extent to which any sort of deference should apply. I'm just wondering what would happen if the Department of the Interior came in and said we have a great deal of concern about this because I think this is going to interfere with our ability to secure additional leases on federal property. And I'm just making facts up. I'm just making things up. But if they came in and said we have these concerns, and for that reason we've always understood this statute to mean this, even though there's no express preemption here, I agree with the district court on that, but we have always thought that we had an obligation to protect this information and that our lessees would have the ability to shield this information from public disclosure for a period longer than 24 months. Now, if DOI came out and came back with something like that, what's the answer? Judge Bagby, I think the answer is that if DOI said that, then it's contrary to what they said in their lease, which made it subject to all applicable laws, which includes state laws, and Conoco knew that it needed to go to the AOGCC. It would be contrary to what Congress did in the NPRPA, which has recognized the state's dual regulatory authority here. It would be contrary to Interior's own regulations, which are the only ones that apply to the NPRPA, which Conoco relies on, is that 43 CFR 3152.6, which only applies to the general FOIA regulations here and doesn't actually set confidentiality periods or give operators any sort of specific terms to rely on with respect to confidentiality, and it would also conflict with the Outer Continental Shelf regulations, which by their terms apply to the Outer Continental Shelf, and under Conoco's reading of the regulations, Conoco actually just cherry-picks one of the Outer Continental Shelf regulations and says that one should apply, but not the others. Now, the one that Conoco wants to apply is 30 CFR 552.6B, and all that says is that if Interior is going to commit to hold something confidential, it'll seek the lessee's consent before it releases that information. Alaska's statute does the same thing, and in that subpart B of that section, it also has an accept clause at the start. Except as provided under several other regulations, those regulations set specific timeframes for the release of information in the Outer Continental Shelf. And, in fact, with respect to leases in the Outer Continental Shelf, geological data and well data can be released as early as two years, under 30 CFR 250.197 and 550.197. Conoco doesn't argue that those specific OCS timeframes apply to its operations in the NPRA. The only timeframe it identifies is within its lease. And, again, leases can't preempt state law. We don't have any statute or any regulation here that indicates that Congress, or even Interior, intended their lease terms to override independent state laws. Moreover, there's no grounds to look to legislative history here to try to find preemptive purpose. This case falls squarely within the Supreme Court's warning in Virginia Uranium that looking to legislative history for preemptive purposes can end up displacing state laws with purposes that lack the democratic provenance that the Constitution demands for the Semi-Supremacy Clause to take place. Again, we need congressional indication that confidentiality, specifically confidentiality for the lifetime of a lease, mattered when Congress was drafting the NPRPA, and there is nothing there. And even when we look at the legislative history, Conoco focuses on the 105B report. This is a report that was prepared by the Department of Interior. It reflects Interior's position. It doesn't reflect Congress's position. With respect to information externalities, Interior identified several different ways to address the potential disincentives of information being released. These included joint exploration, and Congress did that in the NPRPA. It allowed for unitization. That's in Subpart J. It identified larger tracts. Congress did that. It adopted 60,000-acre tracts in the NPRPA instead of the about 6,000-acre tracts you see in the Outer Continental Shelf. Congress also expressly said in the NPRPA that it could incentivize exploration by reducing royalty rates in consultation with Alaska. That's at Subpart K. But what Congress didn't do is adopt Interior's proposal of confidentiality for 10 years. That doesn't appear in the NPRA. So, again, it's the absence of what Congress did here that really shows that Congress had no preemptive purposes. This Court should reverse, and I'll reserve the remainder of my time. Thank you. Good morning, Your Honors. I'm Kevin Cuddy for the Appalachian ConocoPhillips Alaska Inc. I may have pleased the Court. The state laws at issue here undercut the federal leasing program's confidentiality requirements under the NPRPA, unless those state laws are preempted as applied. The NPRPA protects the confidentiality of explorers' data, and the state laws requiring early public disclosure would render that federal confidentiality meaningless. Therefore, the District Court's decision should be affirmed. The state laws are preempted under both the obstacle and the express preemption doctrines, but I only plan to address the obstacle preemption this morning. I'll rely on the briefing for the express issue. As to Congress's, I'll address three issues quickly. Congress's full purposes and objectives as reflected in the NPRPA's text and structure, why the state disclosure laws are an obstacle to the accomplishment of those objectives. Counsel, you keep referring to state disclosure laws, but the NPRPA applies to one state. Unlike other laws, the Clean Water Act or the Clean Air Act or something where Congress might have to take into account lots of different regulatory schemes by different states, this is a one-off, and it's a little bit of a double-edged sword. But it suggests that when Congress was dealing here, that it knew precisely who it was dealing with and what their laws were, and that seems to put it in a little different posture. So I take your point, Your Honor. I think that that's frankly where the 105B report plays such an important role here, that you have the Department of Interior statutorily required to conduct this study and to conduct it in consultation with the state of Alaska, which they did. The state of Alaska is weighing in on the proposed terms that would apply to this new exploration period, and that includes these concepts that my friend just mentioned, that permitting this sort of information spillover would be a significant disincentive and therefore recommending that the Department of Interior be given the discretion to preserve the confidentiality of that data up until after the acreage is released back to the government. And the state of Alaska is saying, we agree that we don't object at all to these contract terms. We think that they make sense, and we're looking forward to having information that we'll be able to use. And so in terms of that, I just think that the Congress would be surprised by the state's subsequent action today to try to disclose this data, which was recognized as a significant disincentive to what is, I think all parties agree, the primary purpose. Counsel, same question I put to the state. Are you aware of DOI's views on this? DOI has not entered an appearance, and no, they have not expressed a particular. I mean, have they expressed surprise? Is this contrary to prior practice? Is there something here that DOI might have an interest? Should we ask for DOI's views here, and would it make a difference? The court is welcome, of course, to ask DOI's advice on this issue. Yes, I believe their interpretation of the regulations would be entitled to significant deference. I don't think that the court needs to take that step in order to affirm here, and I would suspect that that may be why the Department of Interior has chosen not to get involved to this point, because preemption was found. And so this state disclosure law, I'll take off the phone. But they didn't know that would happen before the ruling, right? I mean, they could have filed something in the district court with their view. Were they aware of this case? I can't answer that, Your Honor. But, no, they did not take the opportunity to participate. So as to the purpose that we have for the NPRPA, that appears to be uncontradicted, that it was to incentivize exactly this type of exploration. So that's looking at the legislative history, but can I just ask about the text itself? So I know you have an express preemption argument, but I'm having trouble with it. So, I mean, I think that's probably why you're not focused on it here today either. It's a little bit hard to put all the pieces together. And when I look at 1352G, it says it preempts state law with regard to information received or obtained by any person pursuant to this subchapter. Why shouldn't we read that as talking about information received by the state through Interior? Because when it's using that language, let me see if I can find it quickly, in terms of information that is obtained pursuant to this subchapter, that's exactly the same language that is used in the regulation in 1352A, talking about the access to data and information obtained by the lessee from oil and gas exploration. In both instances, we're talking about data that is obtained through the NPRPA, which this undeniably was. That's the only way that ConocoPhillips is able to get into the NPRA, is through the Department of Interior's lease through BLM. And insofar as my friend is suggesting that ConocoPhillips would be prohibited from performing any of this exploration, even if the Department of Interior selected ConocoPhillips as an appropriate lessee, I think that gets you straight into the question of the GEO Group versus Newsom case and whether or not the state is permitted, through intergovernmental immunity, to impose some sort of a license or restriction on the federal government's ability to control its program. But here, it sounds like they could have just said, no, you can't drill at all. That was the position of your friend on the other side. Did you agree with that, that the state could have denied you a permit? Consistent with federal law. I mean, I assume there are some state law requirements, but for all that the federal law has to say about it, the state could have said no. Is that right? We don't believe that is right because of the Newsom case, that this idea of states trying to impose some sort of separate licensing system under the Sperry case, an entirely separate scheme that applies to federal operations for a federal function, and that is exactly what 6506A talks about, is the Department of Interior is required to conduct this expeditious leasing system under the NPRPA. This is where my Outer Continental Shelf question comes in. The Outer Continental Shelf I understand to be purely federal, but this NPRPA is this dual state and federal area. So I'm not sure it's the same as these private prisons. I mean, here we have a statute that's setting up this dual sovereignty situation, right? And I don't think we had that in the private prison case, did we? No. You have a generally applicable state statute that is applying both to all of the other private detention centers and also to this federal function. And so here where they're applying it to the federal function, this is an as-applied challenge to the preemption statute, where they're applying it to a federal leasing program conducted by a federal agency on federal lands. The fact that state laws exist and that the state may be able to exercise police power on issues of criminal law or the environment, health, safety, those are the sort of traditional police powers that one might talk about. When you're talking about prohibiting a federal lessee from performing federal work under a federal lease on federal lands, no, I don't believe that. This is state and federal land. That's where I'm getting confused. I mean, some of the language you want to rely on comes from the outer continental shelf where it is purely federal. But this area, as I understand it, tell me if I'm wrong, this lease is on this land that's not purely federal, right? It is federal land. There is concurrent jurisdiction. Okay. And so, yes. But that seems very significant, doesn't it? I mean, Congress set this up that state law would also govern this land. Congress didn't set up the fact that state law was going to govern on this land. That's just the fact of the background law that applies. What the federal government did do was to say they were going to adopt in two different places in the NPRPA the provisions of the OCSLA, both for the bidding systems in subsection E or F, I forget which, and then, of course, in the information gathering system under subsection M. And so it's trying to adopt and incorporate these provisions, these preexisting provisions, which is, again, part of what it talks about in the 105B report, that part of facilitating this, moving it forward quickly for this expeditious program is we can take a prebaked cake. We have this system that's ready. But why didn't they incorporate more of the cake then? I don't understand. I mean, they only incorporated a little bit and not everything that you're wanting. So, well. I mean, you think they did, but they didn't say it very clearly if that's what they were trying to do. So we don't disagree that it's not a model of clarity, and particularly when you're trying to apply it in this dual concurrent jurisdiction system, there are questions. There is some confusion, and that is exactly the type of ambiguity that you run into when you're talking about not just the incorporation of subsection A1A of 1352, but the conditions of. Well, what does that mean? And what we've seen from the briefing just in this case, there are a number of different potentially reasonable definitions that one might incorporate. I think I counted four from the state alone in its briefing, whether it's talking about the specific particularized requirements of the program, or maybe it's a condition in the sense that you have a legal effective document that applies once there's some uncertain contingency that's been attached. Or maybe it's the operative conditions. We have suggested instead that it should be viewed as the attendant circumstances using dictionary definitions. But I don't see how any of those gets you, how any understanding of conditions of A1A gets you G. So there are two different points. The first is on what the conditions of it will be. The conditions of A1A, talking about how this data is coming in and what conditions attach to that information. The conditions that attach include confidentiality under 1352C. It includes what purposes it's supposed to be used for under 1352B. And it also includes the preemption provision we submit under 1352G. You don't need to get to the express preemption provision. We believe that it is encapsulated within those conditions that apply to, that attach to all of the data that is obtained under the NPRPA through 1352A1A. You don't have to get there in order to affirm here, because 1352A1A also requires the promulgation of these regulations, which the Department did, including through 30 CFR 552.6B, which provides this confidentiality protection. Just to be clear, the OCSLA regulations don't in terms, by their literal terms they don't apply to this information. You're just saying that we should draw an inference from them about how Congress would want, or how Congress and DOI would want this information to be treated. Is that right? No. We believe that in incorporating in subsection M of the NPRPA, it is saying that all the information that is obtained from the NPRA will be subject to the conditions of 1352A1A. And then within A1A it says that the Secretary shall provide these regulations to deal with how this data is to be provided. Those regulations in turn, 552.6B, include that confidentiality. So I don't know that it's an inference so much as just following the... But the 552.6B is about disclosure by the United States of information given to it. And now maybe you can draw an inference. Well, if they weren't going to disclose it themselves, they wouldn't want the state disclosing it. But it doesn't... The literal text does not apply to the state disclosing information that someone has given to it, does it? So there are three quick responses to that, if I can. The first is that 552.6 is in the arena of... It's within the backdrop of this express preemption world that is OXLA. And so I think it's fair to infer that that was understood, that if the federal government can't share this information, it can't be shared, because only the federal government would have it. The second is that subsection B is not specific to the federal government providing or not providing it. It says that simply no data or information that's determined by the director to be exempt shall be provided to the public unless the lessee agrees to that action. So the subsection B is not specific just to what the federal government may do. And then the third kind of broader point is that certainly if the whole point, which it is, if the whole point of the NPRPA is to protect the confidentiality, sorry, to promote the exploration, and we recognize that sharing this information with our competitors at a very early stage, within two years after a well is drilled, even though we know from the record that it can take ten years between finding this resource and actually being able to produce it, two years isn't going to cut it. And so what the Department of Interior here is saying, we are going to ensure that this information is protected until there is consent. And that consent is then provided through the lease, which is a regulatorily defined document. All of those, the lease must be established through the form agreement that the department puts forward. I believe it's 43 CFR 3132.5-1. So you have the lease that we are working from that provides when that consent will be permitted, which is to say after the termination of the lease. That comes directly from the regulations. So I think my friend is simply mistaken on that point. So having talked about what the purpose here is to try to incentivize that exploration, and I do see that I'm out of time. If I can try to finish this thought quickly. Just go ahead and finish the thought and then. Thank you. There can be no doubt that the state laws as applied undermine that purpose. Confidentiality only matters if the data is actually confidential. So the fact that everyone seems very comfortable with the idea that the federal government would be required to protect that confidentiality does not matter if you have a state over here or a local government or any third party who is able to go out and share that information with anyone that they see fit for their own purposes. It's the federal government's choice for a federal program on federal lands with federal leases, and we submit that the law should be preempted. I'm happy to answer any other questions, but I appreciate the panel's time. Thank you very much. I don't remember how much time we have left. We could make it two minutes. That will be fine. Thank you, Erin. I appreciate that. Quick point on the last point that counsel just made with respect to the regulations calling for the lease itself. That regulation, 43 CFR 3132-5.1, simply says that Interior shall create a form for the leases. It doesn't set the lease terms. Again, this life of lease confidentiality can't be found in Interior's regulations that apply to the NPRA, and it can't be found in the statutes. A regulation that simply says BLM, make a form, is not enough. I'd submit to preempt state statutes. I'd like to also address the issue of subpart G and pursuant to the subchapter and its very terms. Now, again, looking at the Outer Continental Shelf Lands Act, the section 1352, it does the two things, information collection and information dissemination. The NPRPA only talks about and only references the information collection. That's actually important because when firms would go out and were looking at exploring in the Outer Continental Shelf, they thought that the data would be kept, that it would be their own proprietary information. The federal government is saying, no, you're going on federal property. You're going to give us the information. And the federal government said, we're going to do the same thing in the NPRA. You're going to go on federal property. We're going to collect the information. But they didn't incorporate all those dissemination to state parts. Those included sending summaries to states, sending data to states under agreements with governors, where states waive sovereign immunity and agree to be bound by whatever federal confidentiality provisions might apply. But the record here shows, and this is an excerpt of Record Page 75, that the AOGCC doesn't get data from BLM. It has to go out and collect it independently. So even when we look at G where it talks about preemption to the extent that this section applies to the information, the section doesn't apply to that information in any sort of preemptive way, because even if it calls generally for confidentiality, it doesn't do so for information that's independently collected. It only applies to that dissemination in the Outer Continental Shelf. Submit that the NPRA is an entirely different framework, different agencies, different regulatory rules. And when we look at the text and the regulations, we'll find no evidence of preemptive purposes or lengthy confidentiality that runs afoul of state law. Thank you, both sides, for the helpful arguments. This case is submitted, and we are adjourned for the day.
judges: BYBEE, FRIEDLAND, MILLER